IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PETE MIRABAL,

       Plaintiff,

vs.                                     1:15-cv-00869-LF

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Pete Mirabal's Motion to Reverse and Remand for a Hearing, filed February 24, 2016 (Doc. 20), and fully briefed on June 7, 2016 (Docs. 24, 25, 26).  The parties have consented to my entering a final judgment in this case. Doc. 12.  Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") applied the correct legal standards, and his decision is supported by substantial evidence.  I further find that the Appeals Council did not err in refusing to consider new evidence.  I therefore DENY Mr. Mirabal's motion and AFFIRM the decision of the Commissioner.

### I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart,* 373 F.3d 1116,

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

## III.   Background and Procedural History

Mr. Mirabal is a 52-year-old man with a high school education.  AR[3] 68–70, 228.  Mr. Mirabal injured his back while working in construction in 1991.  AR 70.  He collected worker's compensation for a "little while," and in 1999, he began working as a cook.  AR 72, 212.  He worked as a cook from 1999 until his alleged onset date of April 1, 2010.  AR 213–16, 229, 235, 301.  Mr. Mirabal collected unemployment benefits in 2011 and 2012.  AR 218–19.  At the time of the Social Security hearing, Mr. Mirabal was homeless and staying with friends or family at night.  AR 74, 238, 273, 275, 280.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 15-1 through 15-12 comprise the sealed administrative record ("AR").  When citing to the record, the Court cites to the AR's internal pagination rather than the CM/ECF document number and page.

Mr. Mirabal applied for disability insurance benefits and supplemental security income in June of 2012, alleging disability based on back problems due to a herniated disc.  AR 199–204, 205–11, 228.  The Commissioner denied his claim initially and upon reconsideration.  AR 97–118, 119–36, 137–40, 147–53.  Mr. Mirabal requested a hearing before an ALJ, and ALJ Frederick Upshall Jr. held a hearing on November 1, 2013.  AR 63–96, 154–55.

The ALJ issued his unfavorable decision on February 20, 2014.  AR 44–62.  The ALJ found that Mr. Mirabal met the insured status requirement of the Social Security Act through June 30, 2015.  AR 49.  At step one, the ALJ found that Mr. Mirabal had not engaged in substantial, gainful activity since April 1, 2010, the alleged onset date.  *Id.*  Because Mr. Mirabal had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two.  At step two, the ALJ found that Mr. Mirabal suffered from the severe impairments of "degenerative disc disease of the lumbar spine; obesity; hypertension; and generalized anxiety disorder."  *Id.*  At step three, the ALJ found that none of Mr. Mirabal's impairments, alone or in combination, met or medically equaled a Listing.  AR 49–51.  Because none of the impairments met a Listing, the ALJ moved to step four.

At step four, the ALJ found that:

[C]laimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically, he can lift no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds.  He can stand and/or walk six hours in an eight hour work day.  He can sit for two hours in an eight hour work day with normal breaks.  Further, the claimant can never climb ladders, ropes, or scaffolds.  He can only occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl.  He is limited to unskilled work, with no interaction with the public.

AR 51.  The ALJ found that Mr. Mirabal was unable to perform any of his past relevant work.  AR 56.

4

At step five, relying on the testimony of the vocational expert, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," and that Mr. Mirabal was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 56–57. The ALJ found that Mr. Mirabal could perform the jobs of shirt folder, silver wrapper, and merchandise marker. AR 57. Accordingly, the ALJ found that Mr. Mirabal was not disabled. AR 23.

Mr. Mirabal appealed the ALJ's decision to the Appeals Council and submitted additional evidence in support of his disability claims. The Appeals Council considered some of the additional evidence and found that the information did not provide a basis for changing the ALJ's decision. AR 2. The Appeals Council also found that certain medical evidence was information about a later time and did not affect the ALJ's decision. *Id.* Thus, the Appeals Council denied Mr. Mirabal's request for review, making the ALJ's decision the final decision of the Commissioner and prompting this appeal. AR 1–7.

**IV.** **Mr. Mirabal's Claims**

Mr. Mirabal raises three main arguments on appeal: (1) the ALJ's RFC determination was not supported by substantial evidence because he did not weigh the evidence properly, and he failed to consider Mr. Mirabal's obesity in accordance with SSR 02-1p; (2) the ALJ used improper factors in assessing Mr. Mirabal's credibility; and (3) the Appeals Council erred by refusing to admit and consider new evidence. Doc. 20 at 4. I find that the ALJ and the Appeals Council applied the correct legal standards, and that the ALJ's decision was supported by substantial evidence.

## V.    Discussion

### A.  Duty to Develop the Record.

As an initial matter, Mr. Mirabal criticizes the ALJ for failing to develop the record. Doc. 20 at 11, 13, 15.  Although generally the burden to prove disability is on the claimant, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (internal citation and quotation omitted).  Generally, an ALJ should order a consultative exam where there is a direct conflict in the medical evidence requiring resolution, where the medical evidence in the record is inconclusive, or where additional tests are required to explain a diagnosis already contained in the record.  *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997); *see also* 20 C.F.R. § 416.919a (describing the situations that may require a consultative examination).  It is not the duty of the ALJ, however, to act as the claimant's advocate.  *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) (emphasizing that it is not the ALJ's duty to be the claimant's advocate).

When Mr. Mirabal initiated his social security claims, his medical records were insufficient to make a proper determination.  In an effort to develop the record, the New Mexico Disability Determination Services ("DDS")[4] sent Mr. Mirabal for an x-ray in early August of 2012, a consultative examination with Dr. Sylvia Ramos later that month, and a psychological evaluation with Dr. Susan Flynn in November of 2012. AR 318–20, 323, 325–27.  Mr. Mirabal asserts that the ALJ erred by failing to develop the record with regard to Dr. Ramos' report because Dr. Ramos did not have the benefit of his x-ray and did not complete a functional report. Doc. 20 at 11, 13.  Mr. Mirabal also contends that the ALJ should have ordered a medical source

---

[4] DDS is the state agency responsible for authorizing and monitoring consultative examinations to provide a properly developed medical record for Social Security claims at the initial and reconsideration levels.  *See* 20 C.F.R. §§ 404.1519s, 416.919s.

statement from Dr. Flynn "because there was not a plethora of evidence regarding Mr. Mirabal's mental functioning." Doc. 20 at 15. Mr. Mirabal's arguments are without merit.

First, with regard to Dr. Flynn, the absence of a medical source statement in a consultative examination report does not make the report incomplete. 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6). Second, it was not the ALJ's duty to act as advocate for Mr. Mirabal and provide a "plethora of evidence" with regard to Mr. Mirabal's mental functioning. Finally, with regard to Dr. Ramos, the ALJ properly reviewed the evidence regarding Mr. Mirabal's pain, and any error by the ALJ in assessing Dr. Ramos' evaluation is harmless.

Mr. Mirabal criticizes the ALJ's discussion of Dr. Ramos' evaluation "because [the ALJ] apparently was under the impression that Dr. Ramos had a copy of the x-ray evidence," Doc. 20 at 10, when she did not. The ALJ summarized Dr. Ramos' findings and noted, "[i]n connection with the consultative examination, an x-ray of the lumbar spine was completed on August 7, 2012, revealing degenerative changes at L5-S1 disc space. *Based on the foregoing*, Dr. Ramos felt that claimant was limited only by pain; however she did not quantify specific functional limitations (Exhibit 1F)." AR 53 (emphasis added). Mr. Mirabal argues that Dr. Ramos' note that an x-ray or MRI of his lumbosacral spine may help the evaluation (AR 320) indicates that Dr. Ramos <u>did not</u> review the x-ray taken a couple of weeks before her examination. Doc. 20 at 10–1. I agree that the ALJ mistakenly believed that Dr. Ramos had reviewed the x-ray when she had not. This misapprehension, however, does not change the result.

Dr. Ramos performed objective medical tests and a physical examination and concluded that "[Mr. Mirabal] can sit, stand, lift, carry, handle small objects, hear, speak and travel except as limited by pain." AR 319–20. While the x-ray provided objective medical evidence of the

7

cause of Mr. Mirabal's pain, it was not necessary for Dr. Ramos to have reviewed the x-ray to draw her conclusions. Further, two agency doctors reviewed the medical evidence, including the x-ray, and found that Mr. Mirabal could perform light exertional level work with some postural restrictions. AR 114–15; *see also* AR 121–36 (finding Mr. Mirabal not disabled). The ALJ gave the agency doctors' opinions "great weight." AR 56. Mr. Mirabal does not take issue with this finding. The record demonstrates that the ALJ considered all of the evidence in the record. His mistaken belief that Dr. Ramos reviewed the x-ray does not change the outcome and is harmless.

### B. The ALJ applied the correct legal standards in formulating Mr. Mirabal's RFC, and his findings are supported by substantial evidence.

Subjective allegations of pain alone are not sufficient to establish a disability. *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004). When analyzing complaints of pain, an ALJ must follow a two-step process. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *3 (S.S.A. Mar. 16, 2016)[5]; 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ must determine whether the claimant has a medically determinable impairment ("MDI"). SSR 16-3p, 2016 WL 1119029, at *3; *Branum*, 385 F.3d at 1273 (before an ALJ considers subjective complaints of pain, a claimant must first prove the existence of a medically determinable

---

[5] Social Security Ruling SSR 16-3p supersedes SSR 96-7p,1996 WL 374186 (S.S.A. July 2, 1996). SSR 16-3p came into effect on March 16, 2016, more than two years after the ALJ's decision in this case. *See* SSR 16-3p, 2016 WL 1237954, at *1. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). SSR 16-3p is a clarification of existing policy and not a policy change. SSR 16-3p, 2016 WL 1119029, at *1. Although the ALJ did not have the benefit of this clarification when he made his decision, there is no reason to remand because the ALJ's decision is consistent with the new ruling and the applicable regulations. *See Bowman v. Astrue*, 511 F.3d 1270, 1274–75 (10th Cir. 2008); *cf. Frantz v. Astrue* 509 F.3d 1299, 1302 (10th Cir. 2007) (remanding because the court could not determine whether the result would have been different if the ALJ had evaluated the evidence using the new ruling). Neither Mr. Mirabal nor the Commissioner argue that the ALJ erred by failing to apply the correct legal standard under SSR 16-3p, or that this ruling should not be applied retroactively.

impairment). An MDI is a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. *Id*. Once a claimant has established an MDI, he or she must then establish a "loose nexus" between the impairment and the subjective allegations. *Branum,* 385 F.3d at 1273 (quoting *Thompson v. Sullivan*, 987 F.2d 1428, 1488 (10th Cir. 1993)). After the claimant establishes these two prongs, considering all of the evidence—both objective and subjective—the ALJ must determine whether the pain is disabling. *Id.*

With regard to physical impairments, the ALJ determined that Mr. Mirabal had established an MDI of degenerative disc disease of the lumbar spine based on the consultative exam by Dr. Ramos and x-rays of Mr. Mirabal's lumbar spine, which revealed degenerative changes at L5-S1 disc space. AR 49, 52–53, 323, 335. Although Mr. Mirabal had an MDI that could reasonably be expected to cause the alleged symptoms, the ALJ found Mr. Mirabal's "statements concerning the intensity, persistence and limiting effects of these symptoms . . . not entirely credible for the reasons explained in this decision." AR 52.

The Commissioner issued SSR 16-3p to clarify how it evaluates allegations of disabling pain. The Commissioner replaced the prior ruling to "[eliminate] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1.

> Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.

*Id*. at *10. The ruling urges the commissioner to focus on consistency rather than credibility.

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities . . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . .

SSR 16-3p, 2016 WL 1119029, at *7.  Although the ALJ's evaluation was couched in terms of "credibility,"—a term rejected by SSR 16-3p—and evaluated pursuant to SSR 96-7p (AR 51), the ALJ's consideration of Mr. Mirabal's claim is consistent with SSR 16-3p.  The ALJ therefore applied the correct legal standards.[6]

Under the new ruling, the ALJ must consider the intensity, persistence, and limiting effects of an individual's symptoms, based on the consideration of objective medical evidence, and other evidence such as statements from the individual, medical sources, non-medical sources, and the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).[7]  SSR 16-3p,

---

[6] The SSRs are similar enough that the ALJ's decision is in compliance with both SSR 96-7p and SSR 16-3p.  Both SSRs direct the ALJ to consider an individual's statements about the intensity, persistence, and limiting effects of symptoms.  *Compare* SSR 96-7p, 1996 WL 374186, at *1 *with* SSR 16-3p, 2016 WL 1119029, at *4.  Both SSRs direct the ALJ to apply the same seven regulatory factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms.  *Compare* SSR 96-7p, 1996 WL 374186, at *3 *with* SSR 16-3p, 2016 WL 1119029, at *7.  Both SSRs direct the ALJ to determine the consistency of the individual's statements as compared to other evidence in the record.  *Compare* SSR 96-7p, 1996 WL 374186, at *5–*8 *with* SSR 16-3p, 2016 WL 1119029, at *4–*10.

[7] The factors include:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

2016 WL 1119029, at *4–*9.  After considering all of the evidence, the ALJ found that Mr.

Mirabal's statements concerning the intensity persistence and limiting effect of his symptoms

was not consistent with the objective medical evidence and other evidence in the record.

### 1. The objective medical evidence and treatment is not consistent with Mr. Mirabal's claims of disabling pain and anxiety.

The ALJ considered the extent of Mr. Mirabal's medical treatment and found it was

inconsistent with Mr. Mirabal's complaints of disabling pain.  "Persistent attempts to obtain

relief of symptoms, such as increasing dosages and changing medications, trying a variety of

treatments, referrals to specialists, or changing treatment sources may be an indication that an

individual's symptoms are a source of distress and may show that they are intense and

persistent."  SSR 16-3p, 2016 WL 1119029, at *8.  Here, the evidence did not indicate persistent

attempts by Mr. Mirabal to relieve his pain symptoms.  The ALJ explained that—although Mr.

Mirabal was claiming disability since 2010—he did not seek medical treatment before May of

2013, despite having insurance coverage under UNM Care for almost a year.  AR 55, 71–73.

Further, Mr. Mirabal sought treatment for his back pain only once, and only after his request for

a hearing in this case.  AR 55, 71–73, 331–32.  At the May 2013 visit to First Choice Family

Healthcare, the examining physician prescribed medication for Mr. Mirabal's back pain, but did

not comment on his functional limitations.  AR 53, 330–34.  Mr. Mirabal filled the prescription

but stopped taking the medication because of adverse side effects.  AR 80.

---

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2016 WL 1237954, at *7.

In considering whether an individual's symptoms are inconsistent with the evidence, the ALJ must also consider possible reasons the claimant may not comply with treatment or seek other treatment.  SSR 16-3p instructs:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.  We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.

SSR16-3p, 2016 WL 1119029, at *8.

Although Mr. Mirabal stopped taking his medication because of adverse side effects, there is no indication that he sought different medication.  AR 55.  Mr. Mirabal did not follow up with the prescribing doctor because the doctor had offended him, but he also did not obtain a new provider or seek alternative treatment in an effort to relieve his symptoms.  AR 55.  The ALJ concluded, "if his condition was a severe as he claims, one would expect a more prompt effort to obtain a new provider."  *Id*.  Another reason Mr. Mirabal failed to seek treatment is because he was homeless and could not afford medical care.  AR 74.  But the fact that Mr. Mirabal did not take advantage of his UNM Care for nearly a year and only until just before the hearing also was troubling to the ALJ.  AR 55.  The ALJ considered Mr. Mirabal's reasons for not pursuing treatment and sufficiently explained why he found them inconsistent with the degree of severity reported by Mr. Mirabal.

The ALJ additionally found that the objective medical evidence was not consistent with Mr. Mirabal's complaints of disabling anxiety.[8]  Mr. Mirabal did not voice any concerns about

---

[8] Mr. Mirabal contends that the ALJ failed to include any limitations that stem from his depression.  Doc. 20 at 13.  Mr. Mirabal was not diagnosed with—nor did he complain of—

anxiety attacks to the providers at First Choice.  AR 53, 330–32.  Dr. Susan Flynn, a state consultative examiner, performed a psychological evaluation of Mr. Mirabal and diagnosed him with generalized anxiety disorder.[9]  AR 53.  While an examining physician's opinion is not entitled to the deference of a treating physician's opinion, the ALJ still is required to consider the opinion and provide specific, legitimate reasons for rejecting it.  *See Doyle v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

Dr. Flynn opined that "[Mr. Mirabal] currently had some serious symptoms as she offered a global assessment of functioning (GAF) score of 50."  *See* AR 53.  Mr. Mirabal criticizes the ALJ for giving the GAF score "little weight" solely because Dr. Flynn was a one-time consulting physician.  Doc. 20 at 15.  Mr. Mirabal argues that the ALJ's reason for discounting the GAF score was invalid because the Commissioner is encouraged to refer claimants to one-time consultative examinations.  *Id*.  Given the nature of a GAF score, however, the Court is able to follow the ALJ's reasoning and finds no error.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.  In conducting our review, we should, indeed must, exercise common sense.  The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection."); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (the ALJ's

---

depression prior to the ALJ's determination (AR 326, 327 ("He says he is not depressed")), and therefore the ALJ was not required to include any such impairment in formulating Mr. Mirabal's RFC.

[9] Additionally, as noted above, the absence of a medical source statement in a consultative examination report will not make the report incomplete.  20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6).

decision must be "sufficiently specific to make clear to any subsequent reviews the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight").

The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's

judgment of the individual's overall level of functioning."  American Psychiatric Association,

Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000).[10]

> According to revised AM[11] the problems that may arise with the use of GAF
> scores to evaluate disability include:  1. GAF ratings are not standardized, with
> the result that SSA "adjudicators cannot draw reliable inferences from differences
> in GAF ratings assigned by different clinicians or from a single GAF rating.  A
> GAF rating compares the patient with the distinctive population of patients the
> clinician has known.  This limits direct comparability of GAF ratings assigned by
> different evaluators or even by the same evaluator at substantially different points
> in time."  2. GAF ratings are not designed to predict outcome but rather to "help
> plan and measure the impact of treatment."  3. GAF ratings need supporting
> detail.

2 Soc. Sec. Disab. Claims Prac. & Proc. § 22:243 (2nd ed.) (quoting AM-13066 REV.).  Despite

these issues, a GAF score is considered opinion evidence and must be weighed pursuant to 20

C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)[12] when they come from an acceptable medical

---

[10] A GAF of 61 to 70 indicates "mild symptoms" or "some difficulty in in social, occupational, or
school functioning."  American Psychiatric Association, Diagnostic and Statistical Manual of
Mental Disorders 32 (4th ed. 2000) at 34.  A GAF score of 51 to 60 indicates "[m]oderate
symptoms," such as "a flat affect and circumstantial speech, occasional panic attacks," or
"moderate difficulty in social or occupational functioning."  Id.  A GAF score of 41 to 50
indicates "[s]erious symptoms. . .  [or] any serious impairment in social, occupational, or school
functioning," such as inability to keep a job.  Id.  A GAF score of 31 to 40 indicates "some
impairment in reality testing or communication," such as "speech is at times illogical, obscure or
irrelevant" or "major impairment in several areas, such as work or school, family relations,
judgment, thinking, or mood."  Id.

[11] In October 2014, the Social Security Administration issued a revised Administrative Message
(AM) on use of GAF scores.  The AM applies to all adjudicators, including ALJs, and provides
that GAF ratings are considered as opinion evidence.

[12] The factors used to weigh medical source opinions include:  the length of the treatment
relationship and the frequency of examination; the nature and extent of the treatment
relationship, including the treatment provided and the kind of examination or testing performed;
the degree to which the physician's opinion is supported by relevant evidence; the consistency

14

source.  *Id*.  The ALJ discounted Mr. Mirabal's GAF score because it was based on a one-time assessment from a doctor who was not in a treating relationship with him and did not have access to any mental health care treatment records.  AR 53.  Because adjudicators cannot draw reliable inferences from a single GAF rating, the ALJ appropriately gave little weight to the GAF score Dr. Flynn assigned to Mr. Mirabal.

The ALJ further noted that Dr. Flynn assessed Mr. Mirabal as having a GAF score of "65 in the past."  AR 53, 327.  Mr. Mirabal argues that the ALJ's statement that "it is unclear how [Dr. Flynn] was able to address past functioning" is error because "[p]sychologists are trained to do so."  Doc. 20 at 15.  He contends that the past GAF score was a "clinical finding" based on the doctor's mental status examination.  *Id*.  The ALJ discounted the past score because of Dr. Flynn's limited relationship with Mr. Mirabal.  AR 53.  Indeed, there is no supporting detail of how she arrived at the past score.  AR 327.  Because the ALJ provided specific, legitimate reasons for the weight he gave Dr. Flynn's past—as well as current—GAF score, I find no error in his assessment.

### 2. Mr. Mirabal's work history and daily activities are not consistent with his claims of disabling pain.

"In determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work related activities . . ., we will consider the consistency of the individual's own statements.  To do so, we will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the

---

between the opinion and the record as a while; whether or not the physician is a specialist in the area upon which an opinion is rendered; and other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007 (citing 20 C.F.R §§ 404.1527, 416.927).  While an ALJ must consider these factors, the ALJ need not expressly discuss each of them in his or her opinion.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

individual made under other circumstances."  SSR 16-3p, 2016 WL 1119029, at *8.  Mr.

Mirabal's statements made in connection with his claim for disability are inconsistent with his

work history and daily activities.  For example, Mr. Mirabal sustained a back injury in the early

90's while working construction, and he stopped working between 1992 and 1998.  AR 52, 54.

He began working again in 1999 and had steady income from 2003 to 2009.  *Id.*  Mr. Mirabal

maintains that his back pain has gotten progressively worse and caused him to stop working

altogether in 2010.  AR 52, 78.  The ALJ explained, however, that "[i]t is apparent [Mr. Mirabal]

was able to work with his impairments, and there is no objective evidence to show that the

claimant's impairments had increased in severity since his alleged onset date, strongly

suggesting these impairments would not currently prevent him [from working]."  AR 54–55.

Further, Mr. Mirabal was receiving unemployment insurance during the relevant time period.

AR 55.  "This required the claimant to certify he was willing and able to engage in work activity,

which I find inconsistent with a claim for disability."  *Id*.  This conclusion was entirely proper.

*See Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015) ("There is an obvious

inconsistency between claiming an *ability* to work for purposes of obtaining unemployment

compensation and claiming an *inability* to work for purposes of obtaining social security

benefits.") (emphasis in original).[13]

The ALJ discussed Mr. Mirabal's daily activities and observed that "the claimant is quite

active despite his alleged symptoms and limitations."  AR 50.  The evidence supports the ALJ's

conclusion that Mr. Mirabal "is able to perform light chores, shop, drive a motorcycle, take daily

---

[13] Mr. Mirabal argues that because "New Mexico law allows an individual seeking only part-time work to qualify for unemployment compensation," receiving unemployment "should not automatically allow a finding that the claimant is not credible."  Doc. 20 at 18.  This argument is without merit because there is no evidence in the record that Mr. Mirabal was seeking only part-time work while accepting unemployment compensation.

walks, pay bills, manage bank accounts, care for his personal needs independently, and [he]

enjoys drawing."  AR 50, 82, 103, 105, 260.  In his functional reports, Mr. Mirabal states that

when he stays with friends and family, he cooks for them, which takes a couple of hours.  AR

238, 241 257.  He also attends church once a week.  AR 50, 241, 261.  Because he is homeless,

he spends his days "walking around [the] city."  AR 55, 277, 280.  At step three, the ALJ

concluded that Mr. Mirabal has only "a mild degree of limitation in his activities of daily living."

AR 50.  Mr. Mirabal does not dispute this finding.  Substantial evidence supports the ALJ's

determination that Mr. Mirabal was capable of light work.

### 3.  Mr. Mirabal's claim that obesity and knee pain contributed to his functional limitations is not consistent with the evidence.

Mr. Mirabal reported to Dr. Ramos that he experienced knee pain.  AR 318.  The ALJ did

not find that Mr. Mirabal's knee pain was a severe impairment at step two.  *See* AR 49.  Further,

the objective medical evidence did not establish a medically determinable impairment in Mr.

Mirabal's knee.  An x-ray from January 28, 2014, identified "[n]o significant knee abnormality."

AR 337.  Despite having not established an MDI for his knee pain, Mr. Mirabal argues that his

obesity contributed to the pain in his knees, and that the ALJ failed to properly account for his

obesity as a contributory factor to his functional limitations when assessing his RFC.  Doc. 20 at

12.

"The RFC assessment considers only functional limitations and restrictions that result

from an individual's medically determinable impairment or combination of impairments,

including the impact of any related symptoms."  SSR 96-8p, 1996 WL 374184, at *1.  An ALJ is

required to consider the effects of obesity when assessing a claimant's RFC.  *See* SSR 02-1p,

2002 WL 34686281, at *1 (S.S.A. Sept. 12, 2002).  SSR 02-1p cautions that "[o]besity in

combination with another impairment may or may not increase the severity or functional

limitations of the other impairment." *Id.* at *6.  However, the ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but instead must "evaluate each case based on the information in the case record." *Id.*  Absent record evidence that obesity resulted in additional functional limitations or exacerbated other impairments, an ALJ is not required to discuss the effects of obesity.  *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) (unpublished) (finding no error where there was no evidence in the record of any functional limitations from the claimant's obesity that was inconsistent with the RFC); *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (unpublished) (ALJ is not required to note the absence of any evidence that obesity resulted in additional functional limitations or exacerbated any other impairments); *see also Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (ALJ did not err where the factual record did not support claimant's position that her obesity precluded her from performing a limited range of sedentary work).

Mr. Mirabal offers two pieces of evidence that his obesity contributed to his functional limitations:  (1) his doctor advised him to lose weight, and (2) his statements that he cannot stand or walk for prolonged periods.  Doc. 20 at 12.  This is insufficient.  The doctor's advice to lose weight was not necessarily based on a concern for the exacerbation of Mr. Mirabal's knee pain.  For example, Dr. Ramos noted that Mr. Mirabal had high blood pressure.  AR 320.  Obesity increases the risk of high blood pressure or "hypertension".  SSR 02-1p, 2002 WL 34686281, at *3.  Indeed, there are a number of health risks that are associated with obesity, such as type II diabetes, heart disease, peripheral vascular disease, stroke, osteoarthritis, and sleep apnea.  *Id.*  "The fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of the impairments.  It means that they are at greater than average

risk for developing the other impairments." *Id.*  While Mr. Mirabal may be at risk for other impairments because he is obese, none of the doctors who examined him or examined the medical evidence opined that his obesity caused or contributed to any functional limitations. Without record evidence that Mr. Mirabal's obesity contributes to his knee pain or caused other functional limitations, the ALJ cannot assume that his obesity has limiting functional effects. Substantial evidence supports the ALJ's conclusion that "there is no evidence that the claimant's obesity has significantly interfered with the claimant's ability to work or perform activities of daily living."  AR 54.

### C.  New Evidence submitted to the Appeals Council

Following the ALJ's decision, Mr. Mirabal submitted additional evidence to the Appeals Council.  The new evidence consisted of medical records from UNM Health Sciences Center ("UNMH") dated January 28, 2014 (AR 337), medical records from North Valley Medical, dated November 19, 2013 through February 18, 2014 (AR 338–75), and medical records from North Valley Medical dated March 5, 2014 through April 3, 2014 (AR 8–43).  The Appeals Council considered the medical records from UNMH and the November 2013 through February 2014 records from North Valley Medical and concluded "this information does not provide a basis for changing the Administrative Law Judge's decision."  AR 2; *see also* AR 6 (noting records it considered and make part of the record).  Mr. Mirabal does not dispute this finding.

The Appeals Council found that because the ALJ "decided [Mr. Mirabal's] case through February, 20, 2014," the March and April 2014 medical records were "from a later time" and concluded that "it does not affect the decision about whether you were disabled beginning on or before February 20, 2014."  AR 2.  Mr. Mirabal argues that the Appeals Council erred by failing to consider the March and April 2014 evidence.  Doc. 20 at 18–22; Doc. 25 at 5–6.

New evidence submitted to the Appeals Council becomes a part of the administrative record for the purposes of evaluating the Commissioner's decision for substantial evidence. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). The regulations specifically require the Appeals Council to consider evidence submitted with a request for review if the additional evidence is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); *Threet*, 353 F.3d at 1191. "If the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further proceedings." *Threet*, 353 F.3d at 1191. If, however, "the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). "Whether evidence qualifies as new, material and chronologically relevant is a question of law subject to our de novo review." *Id.*

There is no question that the March and April 2014 medical records are new evidence. "This evidence was not available to the ALJ at the time he made his decision, and is thus neither duplicative nor cumulative." *Threet*, 353 F.3d at 1191. Instead, the parties dispute whether the evidence is chronologically relevant. *See* Doc. 20 at 21–22; Doc. 24 at 14–15. Mr. Mirabal also contends that that new evidence is material. Doc. 20 at 19–21.

Evidence is chronologically relevant if it relates to the time period on or before the ALJ's decision. *Threet*, 353 F.3d at 1191. I agree that the evidence is chronologically relevant. The March and April 2014 records indicate that Mr. Mirabal was seeking treatment for chronic back pain, chronic sciatica, anxiety, and obesity that relate to the period before the ALJ's decision. AR 8, 16, 19, 20–21, 23–24, 29–30, 41, 42. On the other hand, the medical records further indicate that Mr. Mirabal is suffering from depression. AR 12, 41. Mr. Mirabal's depression is a newly diagnosed condition and does not relate back to the period before the ALJ's decision.

Accordingly, evidence with regard to depression does not qualify for consideration by the Appeals Council.[14]

Although the March and April 2014 evidence is new and chronologically relevant—with the exception of the diagnosis for depression—it does not qualify for review because it is not material. "Evidence is material to the determination of disability if there is a reasonable possibility that it would have changed the outcome." *Threet*, 353 F.3d at 1191 (internal quotations and citation omitted). While the new evidence indicates that Mr. Mirabal sought treatment for his impairments, there is no indication that the impairments had become worse. Further, the March and April 2014 evidence does not establish that Mr. Mirabal's impairments limit his ability to perform work-related activities in a manner inconsistent with Mr. Mirabal's RFC. "The evidence indicated at most the mere presence of a condition with no vocationally relevant impact—a patently inadequate basis for a disability claim." *Chambers*, 389 F.3d at 1144. Because the March and April evidence was not material, the Appeals Council was not required to consider it.

## VI.    Conclusion

The ALJ used the proper legal standards in evaluating Mr. Mirabal's pain symptoms and mental limitations pursuant to the Social Security rulings and regulations, and Mr. Mirabal's RFC was supported by substantial evidence. The ALJ also relied on the proper factors in determining whether Mr. Mirabal's statements were consistent with the other evidence in the

---

[14] Mr. Mirabal argues that the diagnosis of depression by doctors after the ALJ's decision relates back because Dr. Flynn found that Mr. Mirabal had a "depressed affect." Doc. 25 at 5. Dr. Flynn did not diagnose Mr. Mirabal with depression and, in fact, noted "Pete's affect seems in the normal range with normal energy and a depressed *quality*. He says he is not depressed but he is sad . . . ." AR 326 (emphasis added). Although it appears Mr. Mirabal's mental condition deteriorated after the Commissioner denied social security benefits, the diagnosis for depression does not relate back to before the ALJ's decision, and the Appeals Counsel was not required to consider it.

record.  The ALJ's conclusion that Mr. Mirabal's obesity did not significantly interfere with his functional limitations was supported by substantial evidence.  Finally, the Appeals Council did not err by refusing to consider new evidence that did not qualify for review because it was not material to the outcome of the case.

IT IS THEREFORE ORDERED that Mr. Mirabal's Motion to Reverse and Remand for a Rehearing (Doc. 20) is DENIED and the decision of the Commissioner is AFFIRMED.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent